UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.

CARLOS JOHNSON,

       Defendant.
_____/

Case No. 2:23-cr-20569

Honorable Susan K. DeClercq
United States District Judge

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT (ECF No. 18)**

Carlos Johnson is charged with being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1) and with illegal possession of a machinegun under 18 U.S.C. § 922(o). Johnson now moves to dismiss the indictment's felon-in-possession count under the Second Amendment, arguing that § 922(g)(1) is unconstitutional as applied to him. ECF No. 37. Bearing on this motion is the Sixth Circuit's recent decision in *United States v. Williams*, which held that § 922(g)(1) "is constitutional on its face and as applied to dangerous people." 113 F.4th 637, 662–63 (6th Cir. 2024). As explained below, because Johnson's criminal history includes conduct that posed a significant threat of danger, § 922(g)(1) is constitutional as applied to him. His motion will therefore be denied.

## I. BACKGROUND

Carlos Johnson is 23 years old. He has five felony convictions, all for violations of Michigan law:

- On December 3, 2019, Johnson pleaded guilty to carrying a concealed weapon. He was sentenced to two years of probation. ECF No. 34-2 at PageID.320.

- On June 30, 2022, Johnson pleaded guilty to receiving and concealing stolen property—motor vehicle. He was sentenced to two years of probation. ECF No. 34-3 at PageID.321.

- On July 21, 2022, Johnson pleaded guilty to three counts of uttering and publishing counterfeit bills/notes. ECF No. 34-4.

When Johnson was arrested in connection with the current charges before this Court, he was still on probation for the stolen-vehicle conviction. ECF Nos. 1 at PageID.6; 36 at PageID.342.

Johnson moved to dismiss the indictment's felon-in-possession count in January 2024, before the case was reassigned to the undersigned. ECF No. 18. Once the case was reassigned in June 2024, this Court held a status conference in which the parties requested that a ruling on the motion be delayed until the Sixth Circuit ruled on § 922(g)(1)'s constitutionality, as a decision was forthcoming. *See* ECF No. 30. Sure enough, on August 23, 2024, the Sixth Circuit decided *Williams*, which provided the necessary guidance. This Court therefore ordered supplemental briefing on how *Williams* applies to this case, which the parties provided. *See* ECF Nos. 31; 34; 37. A hearing on the motion was held on December 18, 2024.

## II. STANDARD OF REVIEW

Defendants may challenge a defect in an indictment by filing a motion to dismiss before trial. FED. R. CRIM. P. 12(b)(3)(B). Under Criminal Rule 12, before trial, defendants may raise "any defense, objection, or request that the court can determine without a trial on the merits." FED. R. CRIM. P. 12(b)(1). Indeed, "courts evaluating motions to dismiss do not evaluate the evidence upon which the indictment is based," but focus only on the four corners of the indictment. *United States v. Landham*, 251 F.3d 1072, 1079 (6th Cir. 2001).

## III. DISCUSSION

Before considering the merits of Johnson's arguments, it is worth briefly discussing the current legal landscape of firearm regulation.

### A. Firearm-Regulation Precedent

In 2008, the Supreme Court determined that the Second Amendment guarantees an individual right to keep and bear arms. *District of Columbia v. Heller*, 554 U.S. 570, 598–600 (2008). At the time, *Heller* cautioned that no part of its holding "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," such as § 922(g)(1). *Id.* at 626.

But in the past several years, the legal landscape of firearm regulation has changed dramatically. *See, e.g.*, *Williams*, 113 F.4th at 643–46 (detailing development of firearm-regulation precedent since *Heller*); *United States v.*

*Jennings*, No. 2:24-cr-20173, 2024 WL 4560602, at *2 (E.D. Mich. Oct. 24, 2024) (same); *United States v. Lyle*, No. 23-cr-20098, 2024 WL 4819572, at *2 (E.D. Mich. Nov. 18, 2024) (same). Indeed, in 2022, the Supreme Court announced a two-step framework under which courts must evaluate the constitutionality of regulations implicating the Second Amendment. *See New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 24 (2022). Under the *Bruen* framework, courts must "first ask whether 'the Second Amendment's plain text' covers [the defendant's] conduct." *Williams*, 113 F.4th at 648 (quoting *Bruen*, 597 U.S. at 24). If it does, then the Government must "justify its regulation of that conduct by demonstrating that the regulation 'is consistent with the Nation's historical tradition of firearm regulation.'" *Id.* (quoting *Bruen*, 597 U.S. at 24).

Recently, in *United States v. Williams*, the Sixth Circuit evaluated whether the federal felon-in-possession statute, 18 U.S.C. § 922(g)(1), is constitutional under *Bruen's* two-step framework. 113 F.4th at 650–63. The court held that § 922(g)(1) is constitutional both on its face and as applied to people whose criminal history demonstrates dangerousness, *id.* at 662–63, because "our nation's history and tradition demonstrate that Congress may disarm individuals they believe are dangerous," *id.* at 657.

As a result, when considering as-applied challenges under *Williams*, district courts must now evaluate "a defendant's dangerousness." *Id.* at 659. This inquiry is

"fact-specific, depending on the unique circumstances of the individual defendant." *Id.* at 660. Courts may consider a defendant's "entire criminal record," *id.* at 659, which includes any evidence of "past convictions in the record, as well as other judicially noticeable information,"[1] such as prior convictions, *id.* at 660. It is the defendant's burden to show that he is not dangerous. *Id.* at 662.

To help guide the dangerousness inquiry, *Williams* went on to establish three "categories" of criminal activity for courts to consider:

1. People who have committed "a crime 'against the body of another human being,' including (but not limited to) murder, rape, assault, and robbery";

2. People who have committed "a crime that inherently poses a significant threat of danger, including (but not limited to) drug trafficking and burglary"; and

3. People who have committed "crimes that pose no threat of physical danger, like mail fraud, tax fraud, or making false statements."

*Id.* at 663.

A person falling into the first and second categories "will have a very difficult time, to say the least, of showing he is not dangerous." *Id.* at 663. But that is not the case for the third category of crimes, which often "cause no physical harm to another person or the community." Given that fact, the Sixth Circuit noted that district courts

---

[1] A judicially noticeable fact is one that is "not subject to reasonable dispute" because it "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b).

- 5 -

should "have no trouble" concluding that many of the crimes in the third category do not make a person dangerous. *Id.* at 659.

### B. Facial Challenges to § 922(g)(1) and to *Williams*

To start, Johnson contends that § 922(g)(1) is overbroad and thus facially unconstitutional, and that *Williams* improperly attempted to rewrite that statute. ECF No. 31 at PageID.294–95. Johnson also contends that *Williams's* "dangerous person" test is void for vagueness. *Id.* at PageID.295–98. Whatever merit these arguments may or may not have, *Williams* forecloses facial challenges to § 922(g)(1). 113 F.4th at 662 ("[W]e hold today that § 922(g)(1) is constitutional on its face."). And this Court remains duty-bound to apply *Williams* unless or until the Sixth Circuit or the Supreme Court says otherwise. Therefore, these arguments must fail.

### C. As-Applied Challenge to § 922(g)(1)

Johnson next argues that § 922(g)(1) is unconstitutional as applied to him because his criminal history does not include dangerous conduct. However, before turning to Johnson's specific felony convictions, it is worth discussing what evidence should be considered in making the dangerousness determination.

#### 1. What Evidence Should the Court Consider?

In arguing that Johnson is dangerous, the Government relies on allegations of violence from state presentence reports (PSRs) and a state probation-violation

report, and the allegations underlying the current charges. Johnson objects that these are inappropriate to consider under the *Williams* inquiry.

Recall that *Williams* directs courts to make "fact-specific" dangerousness determinations that "depend[] on the unique circumstances of the individual defendant." 113 F.4th at 660. *Williams* also permits courts to consider a defendant's "entire criminal record," *id.* at 659, which includes any evidence of "past convictions in the record, as well as other judicially noticeable information," such as prior convictions, *id.* at 660.

But what does this mean in practice? Over this, the parties disagree. For one, Johnson takes issue with how the Government relies heavily on allegations from state presentence reports (PSRs) and a state probation-violation report in arguing that he is dangerous. *See* ECF No. 34 at PageID.307–09 (citing ECF Nos. 35-1; 35-2; 35-3; 35-4 (all sealed)). For instance, the Government cites the PSR and the probation-violation report related to Johnson's conviction for receiving and concealing a motor vehicle. ECF Nos. 35-2; 35-4. That PSR describes how police responded to a potential breaking and entering, where Johnson was alleged to have kicked in the front door of a house, and where an officer heard a woman scream, "Get out of my house!" ECF No. 35-2 at PageID.333. And the probation-violation report alleges that Johnson physically assaulted two women—hitting one of them in

the head with a handgun—and that he fired several shots through the backseat of his car and out the car window. ECF No. 35–4 at PageID.338–39.

Johnson notes that this information comes from sections titled "Agent's Description of the Offense," which, he says, are often just police reports copied and pasted into the PSRs. ECF No. 37 at PageID.345. Because these "agent descriptions" contain "unsourced hearsay, untested accusations," and information "regarding conduct that was never charged," Johnson argues that they are unreliable and thus inappropriate for the Court's consideration under *Williams*. *Id.* at PageID.344.

The Government retorts that, in *Williams* itself, the Sixth Circuit considered the defendant's PSR, which "provided details about his long record of past crimes." 113 F.4th at 662. *Williams* also found it significant that the defendant there had never objected to the PSR's contents.[2] *Id.* Certainly, as Johnson concedes, *some* information in the state PSRs may be appropriate to consider, like unchallenged facts describing the offense conduct, or facts about a defendant's background or criminal history. ECF No. 31 at PageID.291.

But in truth, this Court is skeptical about accepting *all* information in the state PSRs at face value. This skepticism is for several reasons. First, the process for creating PSRs at the state level appears to vary among counties, with differing

---

[2] Here, it is unknown whether Johnson objected to the contents of the PSRs during the state proceedings.

degrees of defendant and defense-attorney input, which could bear on a PSR's reliability.[3]

Second, the portions of PSRs incorporating police reports may include allegations of uncharged conduct, hearsay, and similar information whose reliability cannot be assumed. Consider again the allegations of breaking and entering and physical assault against Johnson. Of course, these actions would suggest dangerousness, which is perhaps why the Government cited these alleged incidents in its briefing. ECF No. 34 at PageID.307–09. However, Johnson was never charged with or convicted of breaking and entering, nor with any type of assault, meaning that these allegations remain a far cry from the "judicially noticeable information" that *Williams* deems appropriate to consider. And, really, none of these allegations relate to what he *was* convicted of (i.e., the stolen-vehicle charge), so it is doubtful that they form part of his criminal record.

---

[3] At oral argument, both the Government's counsel and Johnson's counsel discussed their experiences in state-court criminal practice with PSRs. Johnson's counsel had practiced in Wayne County and stated that the PSR process there was often truncated in a manner prejudicial to defendants. She noted that, until recently, state defense attorneys were excluded from presentence interviews, that a proposed PSR was provided to defense attorneys only two days before sentencing, and that there was no process for submitting written objections. The Government's counsel, on the other hand, had practiced in Jackson County and described a much more iterative process. He noted that both parties would receive a proposed PSR well before sentencing and that there were opportunities to dispute its contents both with the probation department and the judge. Contested parts of the report would then be stricken before a finalized version was issued.

For largely the same reasons, this Court will also not consider the allegations underlying the instant charges against Johnson. The facts surrounding both the felon-in-possession and the machinegun charges remain heavily disputed, and Johnson has not yet been convicted.

In sum, though there are not yet exact contours on the universe of information to be considered in the *Williams* inquiry, it is not as vast as the Government suggests.

### 2. Johnson's Criminal History

Turning now to Johnson's undisputed criminal history: he has five prior convictions across three cases, including three counts of uttering and publishing counterfeit bills or notes,[4] one count of receiving and concealing a stolen motor vehicle,[5] and one count of carrying a concealed weapon (CCW).[6] ECF No. 31 at PageID.292.

---

[4] Michigan's statute for uttering and publishing states: "Any person who shall utter or pass, or tender in payment as true, any such false, altered, forged or counterfeit note, certificate or bill of credit for any debt of this state, or any of its political subdivisions or municipalities, any bank bill or promissory note, payable to the bearer thereof, or to the order of any person, issued as aforesaid, knowing the same to be false, altered, forged or counterfeit, with intent to injure or defraud as aforesaid, shall be guilty of a felony." MICH. COMP. LAWS § 750.253.

[5] Michigan's statute for receiving and concealing stolen property states: "A person shall not buy, receive, possess, conceal, or aid in the concealment of a stolen motor vehicle knowing, or having reason to know or reason to believe, that the motor vehicle is stolen, embezzled, or converted." MICH. COMP. LAWS § 750.535(7).

[6] Michigan's statute for concealed carry states that it is a felony for a person to carry certain weapons "concealed on or about his or her person, or whether concealed or otherwise in any vehicle occupied or operated by the person, except in his or her

Four of these convictions—the three for uttering and publishing and the one for concealing a stolen vehicle—do not support a finding of dangerousness. Under the *Williams* framework, these are not crimes against the body, nor do they inherently pose a significant threat of danger. Rather, these offenses are most similar to the fraud and deceit-based crimes set forth in *Williams's* third category. 113 F.4th at 659.

However, Johnson's CCW conviction falls into *Williams's* second category of crimes that "pose a significant threat of danger." *Id.* A look at Michigan's concealed-carry requirements supports this conclusion. Specifically, Michigan law prohibits carrying a concealed firearm on one's person or in one's vehicle without a concealed-pistol license (CPL). MICH. COMP. LAWS § 750.227(2). And to get a CPL, an applicant must be at least 21 years old and receive "training in the safe use and handling of a pistol" by successfully completing "a pistol safety training course." *Id.* § 28.425b(7). At a minimum, that training course must teach:

(i) The safe storage, use, and handling of a pistol including, but not limited to, safe storage, use, and handling to protect child safety.
(ii) Ammunition knowledge, and the fundamentals of pistol shooting.
(iii) Pistol shooting positions.
(iv) Firearms and the law, including civil liability issues and the use of deadly force. This portion must be taught by an attorney or an individual trained in the use of deadly force.
(v) Avoiding criminal attack and controlling a violent confrontation.
(vi) All laws that apply to carrying a concealed pistol in this state.

---

dwelling house, place of business, or on other land possessed by the person, without a license to carry the pistol as provided by law." MICH. COMP. LAWS § 750.227(2).

- 11 -

*Id.* § 28.425j. The course must also provide at least three hours of instruction at a firing range, during which an applicant must fire at least thirty rounds of ammunition. *Id.*

These requirements are not for nothing. They reflect a common-sense concern that concealed firearms are uniquely dangerous, and they represent a common-sense attempt to minimize that danger.

For this reason, Johnson, in disregarding the restrictions imposed by the State, posed a more significant danger to others than someone who complied. *See United States v. Jennings*, No. 24-CR-20173, 2024 WL 4560602, at *5 (E.D. Mich. Oct. 24, 2024) (finding that "illegal gun possession charges," including for CCW, "pose a significant threat of danger" to the community); *United States v. Lownsbury*, No. 5:22-CR-41, 2024 WL 4264970, at *7 (N.D. Ohio Sept. 23, 2024) (same). Of note, Johnson's CCW conviction came before he was 21—before he was old enough to even qualify for a CPL—and nothing suggests that he had ever otherwise received any firearms training.[7]

Johnson emphasizes that the elements of a CCW offense do not include harm or the threat of harm to others. ECF No. 31 at PageID.292. True enough, but the

---

[7] That is not to suggest that *every* CCW conviction will necessarily suggest dangerousness. Imagine a scenario in which a defendant *had* obtained a CPL and the proper training, but simply allowed her CPL to expire. There, a court could perhaps conclude that the defendant's conduct did not pose a danger to others.

elements of the other crimes listed in *Williams's* second category, like drug trafficking and burglary, do not necessarily include those either. *See, e.g.*, 21 U.S.C. § 841 (drug trafficking); MICH. COMP. LAWS § 750.110a (home invasion). Rather, what matters is the threat of danger that accompanies such crimes. It is not a stretch to conclude that a gun in the hands of a young and untrained person poses such a threat.

However, even if Johnson's CCW conviction were not enough to disarm him, his possessing a firearm in violation of his probation conditions probably is. *See United States v. Goins*, 118 F.4th 794, 801–02 ("[O]ur national's historical tradition of forfeiture laws . . . also supports disarming those on parole, probation, or supervised release.") (citing *United States v. Moore*, 111 F.4th 266, 269–72 (3d Cir. 2024)). True, *Goins* suggests that a defendant's dangerousness may factor into this analysis. *See id.* at 798 ("Congress may lawfully disarm probationers . . . who (1) are under a firearm possession limitation as a condition of probation, (2) are under a relatively short probation sentence for a dangerous crime, and (3) whose repeated and recent actions show a likelihood of future dangerous conduct."). And if that is the case, then *Goins* would be less likely to apply here because Johnson was on probation for the stolen-vehicle charge—a nondangerous crime. But other times, the Sixth Circuit has upheld § 922(g)(1) charges under *Goins* based on the fact of a probation violation alone. *See United States v. Taylor*, No. 23-5644, 2024 WL

4891756, at *2 (6th Cir. Nov. 25, 2024) ("Like the defendant in *Goins*, Taylor was also on probation when he possessed firearms in violation of § 922(g)(1). So like *Goins*, Taylor's Second Amendment as-applied challenge to his § 922(g)(1) conviction fails."). This language suggests that it was constitutional to temporarily disarm Johnson based on his probation violation alone.

For these reasons, § 922(g)(1) is constitutional as applied to Johnson.

### IV. CONCLUSION

Accordingly, it is **ORDERED** that Johnson's Motion to Dismiss the Indictment, ECF No. 18, is **DENIED**.

*/s/Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: January 16, 2025